AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
| TACCULAR ANDY MATTHEWS, | ) Case No. 21-6487-Hunt |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __7/12/2021, 7/19/2021, 8/19/2021__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), 841(b)(1)(B) | Distribution of forty grams or more of a mixture and substance containing a detectable amount of fentanyl and ten grams or more of a mixture and substance containing a detectable amount of para-fluorofentanyl |
| 21 U.S.C. § 841(a)(1), 841(b)(1)(C) | Distribution of a mixture and substance containing a detectable amount of heroin |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Romary Corneille, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence in accordance to the requirements of Fed. R. Crim. P. 4.1 by Telephone.

Date: 8/24/2021

_____
*Judge's signature*

City and state: Fort Lauderdale, Florida

Patrick M. Hunt, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your affiant, Romary Corneille, being duly sworn, deposes and states as follows:

### INTRODUCTION

1.   I am a Special Agent with the Drug Enforcement Administration ("DEA") and have served in this capacity since January 2021. Currently, I am assigned to Enforcement Group 6 in the Miami Field Division.[1] As a DEA Special Agent, I have participated in the execution of multiple search and seizure warrants, resulting in the seizure of illegal controlled substances, packaging materials, and other items of evidentiary value. I also participated in debriefings of cooperating individuals and sources of information. Through these debriefings, I have become familiar with the terminology, code words, and brand names used by drug dealers. In addition, I have experience assisting an investigation that involved international drug trafficking and conspiracy.

2.   I previously completed a sixteen-week DEA Basic Agent training program at the DEA Training Academy in Quantico, Virginia, where I received detailed training, both academic and practical application, in the areas of informant handling/debriefing, interview and interrogation techniques, undercover techniques, and the method used by drug traffickers pertaining to the packaging, pricing, importation, and trafficking of controlled substances. In addition, I received academic and practical application training in surveillance and counter surveillance techniques/methods. I also received legal instruction in the Controlled Substances Act, federal drug conspiracy law, Federal Rules of Evidence, Fourth Amendment searches and seizures, the execution of search warrants, and drafting affidavits. Through my training and experience, I am

---

1 Prior to this assignment, I was an officer with the West Palm Beach Police Department in West Palm Beach, Florida, for approximately one (1) year.

1

familiar with the actions, traits, habits, and terminology utilized by drug traffickers, as well as the manner in which they conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the Internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions.

3. As a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 21, and 46 of the United States Code.

4. I make this Affidavit in support of a criminal complaint charging **Taccular Andy Matthews** with violating Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C) (distribution of a controlled substance).

5. I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

## PROBABLE CAUSE

6. On or about July 12, 2021, a law enforcement officer acting in an undercover capacity (UC) placed a phone call to Taccular Andy Matthews ("MATTHEWS") and ordered a half-ounce of heroin. During the phone call, MATTHEWS advised the UC that he was on his way to meet the UC at the predetermined location. On this same date, law enforcement observed MATTHEWS exit a residence located in North Lauderdale, Florida ("North Lauderdale Residence") prior to meeting with the UC. Law enforcement maintained continuous, uninterrupted

surveillance of MATTHEWS from the North Lauderdale Residence to the predetermined location. MATTHEWS did not make any stops or come into contact with anyone along the way. Upon arriving, MATTHEWS made contact with the UC. The UC provided one thousand and five hundred dollars ($1,500.00) of DEA Official Advanced Funds (OAF) to MATTHEWS in exchange for approximately sixteen and one half (16.5) grams of suspected heroin. The substance that MATTHEWS provided to the UC field-tested positive for the presence of fentanyl.

7. On or about July 19, 2021, the UC placed a phone call to MATTHEWS in order to facilitate a heroin transaction later that day. During the phone call, MATTHEWS advised that he was on his way to the predetermined location. On the same date, law enforcement observed MATTHEWS exit the North Lauderdale Residence with a minor child prior to meeting with UC. Law enforcement maintained continuous, uninterrupted surveillance of MATTHEWS from the North Lauderdale Residence to the predetermined location. MATTHEWS did not make any stops or come into contact with anyone along the way. Upon arriving, MATTHEWS made contact with the UC. The UC provided five thousand dollars ($5,000.00) of DEA OAF to MATTHEWS in exchange for approximately 55.72 grams of suspected fentanyl. During this meeting MATTHEWS mentioned he obtained the controlled substance "by the brick" – a slang term referring to a kilogram quantity of a controlled substance. The substance that MATTHEWS provided to the UC field-tested positive for the presence of fentanyl. Laboratory analysis confirmed that the substance contained approximately 55.72 grams of heroin and detectable amounts of fentanyl and para-fluorofentanyl (a fentanyl analogue).

8. On or about July 30, 2021, the UC made a recorded telephone call to MATTHEWS after MATTHEWS had attempted to call the UC him earlier in the day. MATTHEWS told the UC

that he was just giving the UC a courtesy call because the "flavor" – a street term referring to the heroin that the UC had been purchasing – was getting low and he (MATTHEWS) will be switching to a different kind soon and wanted to see if the UC wanted to purchase more. During the call, MATTHEWS advised that the new supply will probably be the same quality or better. The UC stated he would purchase one ounce in the future. MATTHEWS advised that he would sell an ounce of heroin for two thousand eight hundred dollars ($2,800.00) and five thousand dollars ($5,000.00) for two ounces of heroin.

9.    On or about August 18, 2021, the UC made a recorded telephone call to MATTHEWS and ordered one ounce of heroin for two thousand eight hundred dollars ($2,800.00). The next day, the UC made another recorded telephone call to MATTHEWS to confirm the transaction. During the phone conversation, MATTHEWS advised that he was ready to meet with the UC but would need to go to "the crib" – a slang term referring to one's home – to pick up the heroin. Law enforcement followed MATTHEWS and observed him driving a black Chevrolet Tahoe, bearing tag number QFL-R62, with a minor child and an adult male. MATTHEWS drove to a residence believed to be his new home ("Oakland Park residence").[2] As MATTHEWS entered the Oakland Park residence, he was accompanied by a minor child. The unidentified male remained in the vehicle. MATTHEWS remained in the Oakland Park residence for a short time and later exited it with the minor child. After reentering the Chevrolet Tahoe, MATTHEWS drove directly to the Lowes Home Improvement, located at 1001 W Oakland Park Blvd, Oakland Park, Florida. Upon arriving, MATTHEWS exited the vehicle alone and walked up to the passenger window of the UC vehicle. While there, the UC provided $2,800.00 of DEA OAF

---

2 MATTHEWS had previously advised that he was looking to relocate. Law enforcement believes that MATTHEWS relocated prior to the August 18, 2021, transaction.

4

to MATTHEWS in exchange for approximately thirty-one and a half (31.5) grams of suspected heroin. The substance in question field-tested positive for the presence of fentanyl.

## CONCLUSION

10. Based upon the information provided above, there is probable cause to believe that Taccular Andy Matthews violated the following statutory provisions:

- Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) (distribution of forty grams or more of a mixture and substance containing a detectable amount of fentanyl and ten grams or more of a mixture and substance containing a detectable amount of para-fluorofentanyl) and

- Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (distribution of a mixture and substance containing a detectable amount of heroin).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Romary Corneille, Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _telephone_ on this _24th_ day of _August_, 2021.

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

5